**William JIMINEZ, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. 67 Civ. 334.**

United States District Court,
S. D. New York.

April 10, 1970.

Fields, Rosen, McElligott & Auslander, New York City, for plaintiff; James David Auslander, New York City, of counsel.

Foley, Grainger & Darby, New York City, for defendant; Thomas H. Healey, New York City, of counsel.

## OPINION

COOPER, District Judge.

This cause for damages arising out of a claim based on unseaworthiness and negligence was tried to the Court on March 10 and 11, 1970. Plaintiff, a merchant seaman born July 24, 1919, seeks recovery from the defendant owner of the vessel involved herein, the S.S. TUCSON VICTORY, pursuant to the Suits and Admiralty Act, 46 U.S.C. § 781.

■ On April 15, 1966 the vessel, a "Victory" ship, was reactivated by the Maritime Administration. During the morning of that day, members of the ship's crew were engaged in de-greasing the engine room area including a somewhat steep steel ladder of thirteen steps made of open metal grill work. Combined with the grease, the de-greaser solvent created a slippery condition which was allowed to so remain unwiped while the workers lunched elsewhere on the vessel. In that condition, the ladder was not roped off; no warning of any kind was given.

While performing ship's work unrelated to the foregoing, plaintiff had occasion to use that ladder while the grease and solvent were upon it. He slipped on a step above the upper half, continued to slide down to the deck where he landed on his back with considerable force. He was in nowise contributorily negligent. All the foregoing constitute our findings of fact on the issue of liability for unseaworthiness which; from the total trial record, we resolve in plaintiff's favor.

In view of our finding of unseaworthiness, we regard it unnecessary to pass upon the cause of action sounding in negligence.

The fall rendered plaintiff unconscious. From the conflicting testimony on that issue, we are satisfied it lasted twenty minutes at least.

■ We are convinced that plaintiff thereafter was taken by stretcher to the ship's hospital and confined there for three days until the vessel arrived at the Panama Canal Zone. There he was transferred by stretcher to the Gorgas Hospital where he remained a bed patient for treatment and observation during a period of six days. From May 9 to 13, 1966 he was a bed patient at the United States Public Health Service Hospital, Staten Island, New York. One of the medical tests administered there revealed the presence of 142 red blood cells in the spinal fluid—indicative of possible head injury; the test also revealed a post-concussion syndrome. We so find.

We further find that he has been continuously treated at the hospital last mentioned for headaches, dizziness and blackouts; that competent medical examination reveals a cerebral concussion with residual post-concussion effects including a post-traumatic neurotic reaction—all directly attributable to the fall he sustained.

Uncontested is the fact that on January 12, 1967 he was marked "Permanently Not Fit for Duty as An American Seaman." The indications are strong that such would be his status today despite his failure to return to the hospital for re-evaluation thereof.

No claim for medical expenses was interposed.

Plaintiff insists that the injuries he sustained incapacitated him to the extent that he has been unable to work since the date of the accident to the present and that he will be unable to engage in gainful employment in the fu-

ture. We regard as neither binding nor convincing the determination by the Department of Health, Education and Welfare that plaintiff "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * * " (Plaintiff's Posttrial Memorandum).

Plaintiff further claims that as a result of the accident, he has become permanently disabled; that pain and suffering following the mishap have, and for the remainder of his life will continue to be extremely severe and unremitting.

We find that plaintiff is given to exaggeration with respect to the physical and mental consequences flowing from the unfortunate episode. This indulgence may well have severely restricted the extent of what might otherwise have been his justifiably full recovery, for we remain unconvinced that his damages are as extensive as claimed. In other words, on the issue of the extent of injuries and accompanying pain, his unfortunate predilection checked that portion of the total trial record dealing therewith from rising sufficiently to meet the imperative test of a preponderance of credible proof.

For instance, while we were indeed impressed by the testimony of his medical witness (none was presented by defendant) dealing with the seriousness and extensiveness of plaintiff's ailments —past, present and future—so very much of that medical testimony was based on subjective findings that we are uncertain as to the true extent of injuries sustained. Thus it was that plaintiff injured his own cause.

Despite this we are convinced that by reason of the injuries plaintiff was unable to undertake gainful employment for a period of eighteen months subsequent to the accident; that he was duty bound thereafter to mitigate his damage by accepting employment even of limited nature due to his poor work capacity; and that he can engage in such employment in the future.

We further find that as a direct and proximate result of the accident plaintiff experienced relatively severe pain and suffering for approximately a year following the accident; that its constancy to that degree has subsided markedly since then; that occasional spells of dizziness and frequent headaches, accompanied by rare instances of general malaise and corresponding irritability and inconvenience, followed thereafter to the present; that to a progressively lesser degree such will be the plaintiff's disabling restriction in the future.

We are not convinced that plaintiff sustained any loss of hearing or sight due to the accident.

The proof relating to plaintiff's earning capacity and actual wages has quite a wide range. On this score we have decided to take him at his word—the figures reflected in his federal income tax returns; they are the lowest amounts in the proof dealing with this factual issue and we use them as a guide—$3,000 yearly.

In sum, what we have here is a plaintiff with a good claim in liability who has decided to "make a killing." We have no intention to support his resolve. It is evident that plaintiff engages in self-pity to a degree that is self-defeating. Employment of some sort, if his resistence can be overcome, might well prove therapeutically beneficial. While the injuries he sustained amount to much more than "just a bump on the head" and considerably less than the picture of a hopeless cripple which plaintiff unfolds for our estimate, he did sustain injuries quite serious in nature which incapacitated him for a substantial period and he has suffered and will continue to suffer pain therefrom as hereinabove set out.

Taking into consideration plaintiff's earning capacity, his actual earnings, and what he was reasonably certain to have earned during the time lost up to the present had he not been disabled by reason of the vessel's unseaworthiness, and proximate cause having been established, the preponderance of acceptable

evidence prompts us to award therefor the sum of $4500. We are satisfied that his loss of earning power during the remainder of his working life entitles him to an award of $6,000 (we have taken into consideration the reduction to present value in accordance with standard discount tables).

We award a sum which will compensate plaintiff reasonably for pain, suffering and discomfort suffered by him from the date of his accident to the present and, with reasonable certainty, in the future as a result of his injuries —$22,000.

Ordered that judgment be entered for plaintiff William Jiminez against defendant United States of America in the sum of $32,500.